**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In Re:                                              Case No. 14-30060-PGH
                                                    Chapter 11
ACC-Q-DATA, INC.,

  Debtor.
_____/

**EMERGENCY MOTION BY DEBTOR FOR ENTRY OF AN ORDER (A) APPROVING**
**THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND**
**CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO HIGHER**
**AND BETTER OFFERS (B) APPROVING THE ASSET PURCHASE AGREEMENT (C)**
**ESTABLISHING BIDDING PROCEDURES, AND (D) WAIVING THE FOURTEEN**
**DAY STAY RULE PER F.R.B.P. 6004(H)**

**Reason for Exigency**

**The Debtor respectfully requests that this Court set a hearing**
**on this matter on an emergency basis. The Debtor is**
**currently operating at a loss or near break-even, and an**
**immediate sale is required to preserve the value of the estate**
**for the benefit of creditors. The Debtor currently has a cash**
**buyer for the business, and submits that a sale and/or**
**possible auction is needed as soon as this Court will allow to**
**maximize a possible sale price. The Debtor will also be filing**
**a motion to shorten notice period. The Debtor respectfully**
**requests that this Court set a hearing on the matter on**
**October 21, 2014 at 9:30 a.m.**

Debtor and debtor in possession ACC-Q-DATA, INC. (the "**Debtor**"), by and through

undersigned counsel, files this Emergency Motion Pursuant to 11 U.S.C. §§ 105(A) and 363 and

Local Rule 6004-1 for Entry of an Order (a) Approving the Sale of Substantially All Assets of

the Debtor Free and Clear of All Liens and Encumbrances, Subject to Higher and Better Offers;

(b) Approving the Asset Purchase Agreement; (c) Establishing Bidding Procedures; and (d)

Waiving the Fourteen Day Stay Rule (the "**Motion**"), and in support thereof states as follows:

**<u>Summary of Relief Requested</u>**

The Debtor proposes a sale of substantially all assets of the Debtor, listed on Exhibit "A", attached to the Asset Purchase Agreement (the "**<u>Assets</u>**"), subject to higher and better offers, and free of all liens, claims and encumbrances. The Assets include, but are not limited to:

- Customer lists and related records to enable processing of customer accounts
- Two Lenovo computers
- Twelve Dell computers
- Seven Brother printers, 3 years old
- Two Samsung printers
- Ten Brother printers, 2 years old
- All unexpired service contracts with medical providers
- All choses and causes of action
- General intangibles

The Assets do not include accounts receivable or cash held by the Debtor as of the Closing Date (as defined in the Asset Purchase Agreement). The Purchaser will not be assuming any liabilities of the Debtor. The Assets are being sold "as is", "where is", without any guarantees, representations or warranties.

**<u>Factual Background</u>**

1.      On September 5, 2014 (the "**<u>Petition Date</u>**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (as amended, the "**<u>Bankruptcy Code</u>**"), which case is pending before the United States Bankruptcy Court for the Southern District of Florida.

2.      At all times during the pendency of this case, the Debtor has operating its business as a debtor in possession.

3.       This Court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A)(M)(N) and (O).

4.       The Debtor is a Florida corporation with its principal place of business in Boca Raton, Florida. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

5.       The statutory predicates for the relief requested in this Motion are sections 105(a) and 363(b) of the Bankruptcy Code.

**Relief Requested**

6.       By this Motion, the Debtor is seeking the entry of an Order, pursuant to section 363(b) of the Bankruptcy Code, approving the sale of the Assets, pursuant to the asset purchase agreement (the "**Asset Purchase Agreement**") [1]. The proposed sale is outside the ordinary course of business, and will be free and clear of all liens and encumbrances and subject to higher and better offers.

7.       NuMed Wellness, LLC, a Florida limited liability company ("**Purchaser**") has presented the Debtor with an offer for the Assets in the amount of $175,000.00 (the "**Purchase Price**"), which consists of a credit bid in the amount of $150,000.00 [2] and cash of $25,000.00. Purchaser, as a condition subsequent, will have no further right to file a proof of claim as to the Debtor's estate. Purchaser is not an insider of the Debtor nor affiliated with the Debtor.

8.       **PERSONALLY IDENTIFIABLE INFORMATION: THE CONTEMPLATED SALE DOES NOT INCLUDE A SALE OF PERSONALLY IDENTIFIABLE INFORMATION ("PII") PER SECTION 363(B)(1) OF THE BANKRUPTCY CODE. THE CONTEMPLATED SALE WILL INCLUDE A TRANSFER OF THE SELLER'S EXISTING BUSINESS ACCOUNTS AND ACCOMPANYING**

---

[1] The terms of conditions of the Asset Purchase Agreement are substantially incorporated into this Motion. In the event of any discrepancy between the Asset Purchase Agreement and this Motion, the terms and conditions of this Motion govern.
[2] NuMed Wellness, LLC will be the assignee of the claim held by NuMedCare, LLC.

3

**RELATIONSHIPS. THE DEBTOR SUBMITS THAT THE BUSINESS ACCOUNTS MAY CONTAIN INCIDENTAL PII, BUT THAT THE SAME IS NOT BEING SOLD BY THE DEBTOR.**

9.    **HIPAA COMPLIANCE: THE CONTEMPLATED SALE WILL BE CONDUCTED IN ACCORDANCE WITH ALL APPLICABLE HIPAA REGULATIONS.**

10.    The Debtor believes that a sale of its assets is in the best interest of the estate and creditors, as the resulting purchase will provide for a greater benefit than that to be realized by the ongoing operations of the Debtor.

11.    Purchaser will act as the "stalking horse" bidder, subject to the terms described in detail in the Asset Purchase Agreement.

12.    Although Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts have uniformly held that approval of a proposed sale of property pursuant to §363(b) of the Bankruptcy Code is appropriate if the transaction is supported by the reasonable business judgment of the Debtor. *See Community of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063 (2d Cir. 1983); *see also In re Fountain Imaging of N. Miami Beach, LLC,* No. 06-12686, Docket Nos. 215-217 (Bankr. S.D. Fla. Dec. 14, 2006); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del.1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the pre-confirmation sale of assets); *In re Abbotts Dairies Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *Stephens Indus. v. McClung,* 789 F.2d 386, 389-90 (6th Cir. 1986).

13.    In the instant case, the Debtor submits that the most important considerations in assessing the Debtor's business judgment are the consequences to the estate, creditors and other parties in interest. Under the circumstances, there is no better alternative to maximize value for

the benefit of the estate and its creditors than an immediate sale of the Debtor's assets. The Debtor is currently operating at a loss or at close to a break-even point.

14.     The Debtor is also requesting that in order to expedite the sale of the Assets, that the Court waives the requirement that any order issued by the Court approving the sale of the Assets be stayed for fourteen days as required by Federal Rule of Bankruptcy Procedure 6004(h).

**Bidding Procedures**

15.     As the proposed sale to Purchaser is subject to higher and better offers, the Debtor seeks approval of bid procedures as described herein. In order to participate in the contemplated bid process and auction sale (the "**Auction**"), all potential bidders must comply with the bidding procedures as set forth below:

(a) The Auction shall be held at the hearing on this Motion, which shall take place at a date and time to be determined by the Court, at the following location: 1515 N. Flagler Dr., 8th Floor, Courtroom A, West Palm Beach, FL, 33401.

(b) The Debtor shall provide this Motion and a Notice of Sale to those persons listed on the Debtor's matrix, to all parties who contacted the Debtor and have expressed an interest in the Assets, and to all other parties in interest within five business days of the entry of an order approving this Motion.

(c) Parties in interest and other entities may also obtain information regarding the Assets from Debtor's counsel directly, to the extent available.

(d) Any party in interest or other person or entity wishing to bid ("**Bidder**") on the Assets shall cause a duly authorized representative to attend the Auction in person and present its competing bid in person.

(e) In order to present a bid, two business days prior to the start of the Auction, each Bidder shall tender to the Debtor a purchase deposit of $25,000.00 in the form of a certified

check or other form of cleared funds (the "**Deposit**") which shall be non-refundable as to a successful Bidder who fails to close. Deposits tendered by unsuccessful bidders will be returned within five business days of the sale of the Assets. The Deposit will be held in trust in a non-interest bearing account at Furr & Cohen, P.A.

(f) Each Bidder shall be prepared to present to the Debtor evidence to support its ability to close on the purchase of the Assets.

(g) The first successive bid must be equal to or greater than $180,000.00. The incremental amount of subsequent bid increases will be $5,000.00, or in an amount that the Court determines appropriate.

(h) The sale shall be on the terms and conditions set forth in the attached Asset Purchase Agreement. The conveyance documents will be in the form of the attached Asset Purchase Agreement and accompanying Bill of Sale.

(i) Any Bidder seeking information may contact counsel for the Debtor: Aaron A. Wernick, Esq., Furr and Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, Florida 33431; Telephone: (561) 395-0500; e-mail: awernick@furrcohen.com.

**Sale Free and Clear of Liens, Claims, and Encumbrances**

16.    This Court has the statutory authority to authorize the sale of all of the Debtor's assets free and clear of all liens, claims, interests or encumbrances. Pursuant to §363(f) of the Bankruptcy Code, a Debtor may sell all or any part of its property free and clear of any and all liens, claims, encumbrances or interest if (i) such sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to

accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f); *In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988) (§363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided at least one of the subsections is met).

17.     Estate assets may be sold outside the ordinary course of business. §363(b)(1) of the Bankruptcy Code provides that "[t]he Debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Courts interpreting §363(b)(1) of the Bankruptcy Code have held that transactions should be approved under §363(b)(1) when (a) they are supported by the sound business judgment of the debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith. *See In re Fountain Imaging of N. Miami Beach, LLC,* No. 06-12686, Docket Nos. 215-217 (Bankr. S.D. Fla. Dec. 14, 2006); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169 (D. Del. 1991); *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (D. Del. 1987).

18.     Case law generally provides that a sale of assets free and clear of all liens, claims, encumbrances and interests is permissible under §363(f) as long as the liens, claims, encumbrances and interests attach to the net proceeds of the sale. *See In re Wells,* 296 B.R. 728, 734 (Bankr. E.D. Va. 2003) (holding that a Debtor could sell property free and clear of equitable interest in property with interest to attach to proceeds); *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252, 259 (3d Cir. 2000) ("The holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for the purposes of §363(f) and, therefore, attaches to the proceeds of the sale."); *In re WPRV-TV, Inc.,* 143 B.R. 315, 321 (D.P.R. 1991).

19.     The Debtor proposes any liens, if any, to transfer and attach to the net sale proceeds with the same validity, priority, force and effect that such liens had on the Debtor's

assets immediately prior to the closing. As of the filing of this Motion, the Debtor does not believe that any liens exist as to the Debtor's assets. However, in the event that there is a showing of liens existing prepetition and currently in effect, then the Debtor seeks an order that the contemplated sale to the Purchaser or other successful bidder be free and clear of all liens, claims and encumbrances.

20.    Accordingly, the Debtor requests that the Debtor's assets be transferred free and clear of all liens, claims, encumbrances and interests, with such liens, claims, encumbrances and interests attaching to the proceeds of the sale in the same order of priority as such interests existed as of the Petition Date.

### Good Faith Purchaser

21.    While the Bankruptcy Code does not define "good faith", "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the Debtor, or an attempt to take grossly unfair advantage of other bidders." *Abbotts Dairies,* 788 F.2d at 147 (citations omitted).

22.    The Debtor is prepared to make the necessary presentations in order to seek a finding by this Court that the Purchaser or the successful Bidder is a "good faith purchaser" under §363(m) of the Bankruptcy Code and is entitled to all the benefits and protection of a good faith purchaser under §363(m) of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) approving the sale of substantially all of the assets of the Debtor outside the ordinary course of business, free and clear of all liens and encumbrances, subject to higher and better offers; (b) approving the Asset Purchase Agreement; (c) establishing bidding procedures; (d) waiving the

requirement that any order issued by the Court approving the sale of the Assets be stayed for 14 days as required by Federal Rule of Bankruptcy Procedure 6004(h); and (e) such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished by U.S. Mail to all creditors and interested parties on the attached Court matrix on this 7th day of October, 2014.

RESPECTFULLY SUBMITTED,

FURR AND COHEN, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
Tel:(561)395-0500; Fax:(561)338-7532

By: /s/ *Aaron A. Wernick*
Aaron A. Wernick
Florida Bar No: 14059
e-mail:awernick@furrcohen.com

9

# **Exhibit A**
# **Asset Purchase Agreement**

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into as of October ___, 2014, by and among ACC-Q-DATA, INC., a Florida corporation ("Seller"), and NUMED WELLNESS, LLC, a Florida limited liability company ("Buyer").

### BACKGROUND

WHEREAS, on September 5, 2014 (the "Petition Date"), Seller filed a voluntary petition for relief (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), Case No. 14-30060-PGH;

WHEREAS, Seller wishes to sell, and Buyer wishes to buy, pursuant to Section 363(b) of the Bankruptcy Code, certain Assets (defined as those assets listed in the attached Exhibit "A" to this Agreement) of Seller, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I PURCHASE AND SALE

1.1     Purchase and Sale of Assets. Subject to the terms and conditions of this Agreement and subject to the approval of the bankruptcy court, at the Closing Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase, receive and assume, all right, title and interest of Seller in, to and under the Assets, free and clear of all mortgages, liens (including judicial and statutory liens), security interests, encumbrances, claims (including options and rights of first refusal), charges, pledges, hypothecations, covenants, interests and restrictions of any kind or character (collectively, "Encumbrances") pursuant to Sections 363(b) and (f) of the Bankruptcy Code.

1.2     Excluded Assets. Without limitation, except for the Assets, Buyer will not acquire, in connection with the transactions contemplated by this Agreement, any assets or properties of Seller whatsoever, whether real or personal, tangible or intangible, including, but not limited to:

(a) cash held by Seller on the Closing Date; and
(b) accounts receivable held by Seller on the Closing Date.

1.3     No Assumption of Liabilities by Buyer. Buyer does not assume and shall not assume any debt, obligation, lease or any other liability or obligation of Seller, or its subsidiaries, affiliates or owners, of any kind or nature whatsoever, absolute or contingent, known or unknown, whether such liability or obligation arose prior to, on or after the Closing (collectively, the "Excluded Liabilities").

1.4     **PERSONALLY     IDENTIFIABLE     INFORMATION:     THE CONTEMPLATED SALE DOES NOT INCLUDE A SALE OF PERSONALLY IDENTIFIABLE INFORMATION ("PII") PER SECTION 363(B)(1) OF THE**

1

**BANKRUPTCY CODE. THE CONTEMPLATED SALE WILL INCLUDE A TRANSFER OF THE SELLER'S EXISTING BUSINESS ACCOUNTS AND ACCOMPANYING RELATIONSHIPS. THE PARTIES UNDERSTAND THAT THE BUSINESS ACCOUNTS MAY CONTAIN INCIDENTAL PII, BUT THE SAME IS NOT BEING SOLD BY SELLER.**

**1.5    HIPAA COMPLIANCE: THE CONTEMPLATED SALE WILL BE CONDUCTED IN ACCORDANCE WITH ALL APPLICABLE HIPAA REGULATIONS.**

### ARTICLE II PURCHASE PRICE

2.1    Purchase Price for Assets. Subject to the terms and conditions of this Agreement, as full consideration for the Assets, at the Closing, Buyer shall pay to Seller the aggregate amount of $175,000.00 (the "Purchase Price") which consists of (i) $25,000.00 in cash or otherwise cleared funds, and (ii) a credit bid in the amount of $150,000.00, the amount previously lent to Seller. Upon completion of the Closing and the delivery by Seller of all items set forth in Section 3.2 below, Buyer agrees that it will have no further right to file a proof of claim against Seller.

### ARTICLE III THE CLOSING

3.1    Time and Place of the Closing. The closing of the transaction contemplated by this Agreement (the "Closing") shall take place at the offices of Furr & Cohen, 2255 Glades Road, Ste. 337W, Boca Raton, FL 33431 on the second business day after the conditions to Closing set forth in Article VII (excluding conditions that, by their terms, cannot be satisfied until the Closing) have been satisfied (or waived by the party entitled to waive such condition), or at such other place, date and time as the parties may agree in writing (the "Closing Date").

3.2    Deliveries by Seller. At the Closing, Seller shall deliver, or cause to be delivered, the following to Buyer:

(a)    a Bill of Sale and Assignment Agreement substantially in the form attached hereto as Exhibit B (the "Bill of Sale"), and such other instruments of conveyance reasonably necessary for the transfer of the Assets;

(b)    a true and correct copy of the filed Sale Order as entered by the Bankruptcy Court;

(c)    a certificate of an officer of Seller certifying that the closing conditions set forth in Section 7.2(a) and Section 7.2(b) have been satisfied;

(d)    all Documents of Title (as defined in the Uniform Commercial Code) issued to Seller with regard to the Assets, or a letter agreement from Seller to Buyer to exercise commercially reasonable efforts to deliver such Documents of Title to all such Assets within twenty (20) days after Closing;

(e)    passkeys, codes and other items necessary to give Buyer access to the Premises to enable it to commence removal of the Assets in accordance with this Agreement; and

(f)    all such other agreements, documents and instruments as may be reasonably required by Buyer to complete the transactions provided for in this Agreement.

3.3     Deliveries by Buyer. At the Closing, Buyer shall deliver, or cause to be delivered, the following to Seller:

(a)     the Purchase Price by wire transfer of immediately available funds to the Trust Account of Furr & Cohen;

(b)     a counterpart of the Bill of Sale, duly executed by Buyer;

(c)     a certificate of an officer of Buyer certifying that the closing conditions set forth in Section 7.3(a) and Section 7.3(b) have been satisfied; and

(d)     all such other agreements, documents and instruments as may be reasonably required by Seller to complete the transactions provided for in this Agreement.

## ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLER

Subject to the exceptions noted on the disclosure schedule attached hereto, as a material inducement to Buyer to execute and perform its obligations under this Agreement, Seller represents and warrants to Buyer, as of the date hereof and as of the Closing, as follows:

4.1     Organization and Good Standing. Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Florida. Subject to the limitations imposed on Seller as a result of having filed a petition for relief under the Bankruptcy Code, or pursuant to any order entered by the Bankruptcy Court, Seller has full entity power and authority to conduct the Business as it is presently being conducted and to own, operate and lease its properties and assets.

4.2     Authorization. Subject to the entry of the Sale Order and, Seller has the requisite power and authority to execute this Agreement and the other agreements, instruments and certificates to be executed and delivered by it in connection with the transactions contemplated by this Agreement (collectively, the "Seller Ancillary Documents"), to perform its obligations under such agreements, and to consummate the transactions contemplated hereby and thereby. Subject to the entry of the Sale Order, the execution and delivery by Seller of this Agreement and the Seller Ancillary Documents and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate and other organizational action on the part of Seller. This Agreement and the Seller Ancillary Documents have been duly executed and delivered by Seller and, assuming the execution and delivery by Buyer and the entry of the Sale Order, constitute valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

4.3     No Violation; Consents. Upon or after the entry and effectiveness of the Sale Order, the execution and delivery of this Agreement and the Seller Ancillary Documents and the performance of Seller's obligations herein or therein will not (i) conflict with or result in any breach of any provision of the organizational documents of Seller, (ii) violate any applicable foreign, federal, state or local law (including common law), statute, code, ordinance, rule, regulation or other requirement enacted, promulgated, issued or entered by a governmental authority (collectively, "Law"), or (iii) result in the imposition of any Encumbrances upon the

3

Assets, except as are excused by or unenforceable as a result of the filing of the Bankruptcy Case or the applicability of any provision of, or any Law under, the Bankruptcy Code.

      4.4    Title to the Assets. Seller is the sole and lawful owner of, and holds good and marketable title to, the Assets listed on Exhibit A. At the Closing, will receive good and marketable title to the Assets, free and clear of all Encumbrances as permitted under Sections 363(b) and 363(f) of the Bankruptcy Code and subject to the entry of the Sale Order.

      4.5    Litigation. There are no private or governmental actions, suits, proceedings, claims, arbitrations, judgments or decrees or, to Seller's Knowledge, investigations pending against Seller or, to Seller's Knowledge, affecting Seller or the Assets, which (i) contest or challenge Seller's authority, right or ability to perform its obligations under this Agreement or any of the Seller Ancillary Documents, as applicable, (ii) challenge Seller's right, title or ownership in any of the Assets, or (iii) would impair or have an adverse effect on Buyer's right or ability to own, use, commercialize or otherwise exploit any of the Assets, or impair or have an adverse effect on the value of any of the Assets following the Closing. To Seller's Knowledge, there are no proceedings threatened that assert any claim described in clauses (i), (ii) or (iii) of the preceding sentence; provided, however, that if after the date hereof, any action, suit, proceeding, claim, arbitration, judgment decree or investigation described in clause (i), (ii) or (iii) is asserted, instituted or entered, then the representation contained in the first sentence of this Section 4.8 shall be deemed accurate as of the Closing Date so long as an order has been issued by the Bankruptcy Court rejecting, disallowing or dismissing such action, suit, proceeding, claim, arbitration, judgment decree or investigation, no appeal or motion for reconsideration of that order has been filed and the time for filing such motion and an appeal has expired. Except for orders entered in the Bankruptcy Case that do not have an adverse effect on the Assets or on Seller's ability to consummate the transactions contemplated hereunder, there are no judgments, decrees, injunctions or orders of any court, governmental authority, arbitrator or mediator pending or binding against Seller or the Assets.

      4.6    No Brokers. No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Seller in connection with the transactions contemplated hereunder. Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transactions contemplated hereunder based upon any arrangement made by or on behalf of Seller.

      4.7    No Other Representations or Warranties. Except as expressly set forth in this Agreement and the Seller Ancillary Documents, none of Seller or any agent, employee, attorney or other representative of Seller or purporting to represent Seller, makes any representation or warranties, express or implied, of any kind whatsoever to Buyer with respect to the Assets or otherwise, including, without limitation, the maintenance, repair, condition, quality, design, marketability, accuracy, utility or completeness of the equipment, and Seller expressly disclaims as it pertains to Buyer (1) any implied or express warranty of merchantability, (2) any implied or express warranty of fitness for a particular purpose, or (3) any implied or express warranty of conforming to models or samples with respect to any of the foregoing. For the avoidance of doubt, except as set forth in this Agreement or the Seller Ancillary Documents, no warranty or

4

representation is given on the contents of the documents provided in due diligence, on any other documents or other information not contained in this Agreement, all of which were produced only for information purposes.

   4.8 <u>No Inducement or Reliance; Independent Assessment</u>. With respect to the Assets or any other rights to be transferred hereunder, Seller acknowledges it has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Buyer or any agent, employee, attorney or other representative of Buyer representing or purporting to represent Buyer that are not expressly set forth herein (including the exhibits hereto), whether or not any such representations, warranties or statements were made in writing or orally, and Seller acknowledges that none of Buyer, nor any agent, employee, attorney, other representative of Buyer or other Person will have or be subject to any liability to Seller or any other Person resulting from the distribution to Seller, or Seller's use of, any such information, including any information, documents or material made available to Seller in expectation of the transactions contemplated by this Agreement. For purposes of clarification, this Section 4.15 shall not in any way limit any representation, warranty or statement of Buyer made in this Agreement or in any document or instrument delivered to Seller pursuant to this Agreement.

## ARTICLE V REPRESENTATIONS AND WARRANTIES OF BUYER

   As of the date hereof and as of the Closing, as a material inducement to Seller to execute and perform its obligations under this Agreement, Buyer represents and warrants to Seller as follows as of the date hereof and as of the Closing:

   5.1 <u>Organization and Good Standing</u>. Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Buyer has full corporate power and authority to conduct its business as it is presently being conducted and to own, operate and lease its properties and assets.

   5.2 <u>Authorization</u>. Buyer has the requisite power and authority to execute this Agreement and the other agreements, instruments and certificates to be executed and delivered by it in connection with the transactions contemplated by this Agreement (collectively, the "Buyer Ancillary Documents"), to perform its obligations under such agreements, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and the Buyer Ancillary Documents and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action on the part of Buyer. This Agreement and the Buyer Ancillary Documents have been duly executed and delivered by Buyer and, assuming the execution and delivery by Seller and the entry of the Sale Order, constitute valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms, except the availability of the remedy of specific performance or injunctive or other forms of equitable relief may be subject to equitable defenses and would be subject to the discretion of the court before which any proceedings therefor may be brought.

   5.3 <u>No Violation; Consents</u>. The execution and delivery of this Agreement and the Buyer Ancillary Documents and the performance of Buyer's obligations herein or therein will not

(i) conflict with or result in any breach of any provision of the organizational documents of Buyer, (ii) conflict with, require the consent of a third party under, violate, result in the breach of, constitute a default under, or give rise to any right of acceleration, cancellation or termination of any material right or obligation of Buyer under any material agreement or other instrument to which Buyer is a party or by which Buyer or any of its properties or assets are bound, (iii) violate any applicable Law, or (iv) require any consent, approval, authorization or permit of, or filing with or notification to, any governmental authority or other Person which has not otherwise been obtained or made.

      5.4    Litigation. Other than in or pursuant to the Bankruptcy Case, there are no private or governmental actions, suits, proceedings, claims, arbitrations or investigations pending or, to Buyer's knowledge, threatened against Buyer that, if finally determined adversely, would be reasonably likely to have a material adverse effect on Buyer's ability to consummate the transactions contemplated by this Agreement. Other than in or pursuant to the Bankruptcy Case, there are no judgments, decrees, injunctions or orders of any court, governmental authority, arbitrator or mediator pending or binding against Buyer which shall have a material adverse effect on Buyer's ability to consummate the transactions contemplated by this Agreement.

      5.5    No Brokers. No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Buyer in connection with the transactions contemplated hereunder and Seller is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transactions contemplated hereunder based upon any arrangement made by or on behalf of Buyer.

      5.6    No Inducement or Reliance; Independent Assessment. With respect to the Assets or any other rights to be transferred hereunder, Buyer acknowledges it has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee, attorney or other representative of Seller representing or purporting to represent Seller that are not expressly set forth herein (including the exhibits hereto), whether or not any such representations, warranties or statements were made in writing or orally, and Buyer acknowledges that none of Seller, nor any agent, employee, attorney, other representative of Seller or other Person will have or be subject to any liability to Buyer or any other Person resulting from the distribution to Buyer, or Buyer's use of, any such information, including any information, documents or material made available to Buyer in expectation of the transactions contemplated by this Agreement. For purposes of clarification, this Section 5.6 shall not in any way limit any representation, warranty or statement of Seller made in this Agreement or in any document or instrument delivered to Buyer pursuant to this Agreement.

      5.7    No Projections. Buyer acknowledges that neither Seller nor any of its affiliates has made any warranty, express or implied, as to the performance, utility or prospects, financial or otherwise, or the profitability of the Assets for Buyer, or with respect to any forecasts, projections or business plans prepared by or on behalf of Seller and delivered to Buyer in connection with Buyer's review of the Assets and the negotiation and the execution of this Agreement.

5.8     Financing. Buyer has and will have on the Closing Date sufficient cash and cash equivalents and/or existing credit facilities with sufficient borrowing capacity thereunder (and has provided Seller with satisfactory evidence thereof) to purchase the Assets and to consummate the transactions contemplated by this Agreement.

5.9     Buyer's Investigation. Buyer represents that it is a sophisticated entity that was advised by knowledgeable counsel and other advisors and hereby acknowledges that it has conducted an investigation of the Assets. Notwithstanding the foregoing, this Section 5.9 does not limit any representation or warranty made by Seller in this Agreement or any document or instrument delivered to Buyer pursuant to this Agreement.

5.10    No Other Representations and Warranties. Except as expressly set forth in this Agreement and the Buyer Ancillary Documents, neither Buyer nor any agent, employee, attorney or representative of Buyer or purporting to represent Buyer makes any representations or warranties, express or implied, of any kind whatsoever.

## ARTICLE VI COVENANTS OF THE PARTIES

6.1     Access. Prior to the Closing, Seller shall permit Buyer and its respective affiliates, officers, directors, managers, employees, attorneys, investment bankers, accountants and other agents and representatives (collectively, "Representatives") to have reasonable access, prior to Closing, during normal business hours and upon reasonable advance notice, to the personnel of Seller and, to the extent related to the Assets, the properties, books and records of Seller, and Seller will furnish such additional information relating to the Assets as Buyer may from time to time reasonably request.

6.2     Seller's Operation of the Business. From the date hereof, Seller shall, and shall cause its Representatives to, (a) keep the Premises and the Assets intact and maintain the Premises and the Assets until the Closing; and (b) not sell, transfer, pledge or grant a license or a security interest in, or otherwise dispose or encumber, any of the Assets.

6.3     Cooperation Toward Closing. From the date hereof until the Closing Date, subject to the terms and conditions of this Agreement, each of the parties hereto shall use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable Law to consummate and make effective the sale of the Assets in accordance with this Agreement and the Sale Order, including using commercially reasonable efforts to ensure timely satisfaction of the conditions precedent to such party's obligations hereunder.

6.4     Consents. On or prior to the Closing Date, Seller shall use commercially reasonable efforts, and Buyer shall reasonably cooperate with Seller, to obtain at the earliest practical date all material consents, waivers and approvals required to consummate the transactions contemplated by this Agreement.

6.5     Bankruptcy Matters:

(a)    *Filing of Sale Motion.* Promptly after execution of this Agreement, Seller shall file a motion with the Bankruptcy Court (the "Sale Motion") requesting entry of an order that (i) approves the sale of the Assets to Buyer on the terms and conditions set forth in this Agreement and authorizes Seller to proceed with the Closing, (ii) includes a specific finding and conclusion of law that Buyer is a good faith purchaser of the Assets within the meaning of Section 363(m) of the Bankruptcy Code, (iii) states that the sale of the Assets shall be free and clear of all Encumbrances whatsoever, and (iv) such other provisions as reasonably requested or required by Buyer.

(b)    *Copies of Pleadings.* Seller shall, to the extent reasonably practicable, provide Buyer with drafts of all documents, motions, orders, filings or pleadings that it proposes to file with the Bankruptcy Court that relate to the approval of this Agreement and the consummation of the transactions contemplated hereby, and will provide Buyer with reasonable opportunity to review and approve such filings. Seller shall also promptly (within one (1) business day) provide Buyer with copies of all pleadings received by or served by or upon Seller in connection with the Bankruptcy Case that relate to or may reasonably be expected to affect the transactions provided for in this Agreement and which have not otherwise been served on Buyer.

6.6    Taxes; Preparation and Filing.

(a)    Buyer shall bear and be responsible for paying any and all sales, use, transfer, filing, recordation, registration, documentary, stamp, gains and similar taxes and fees, including related penalties, additions to tax, and interest imposed by any governmental authority with respect to the transfer of the Assets (collectively, "Transfer Taxes"), regardless of whether the tax authority seeks to collect such taxes from Seller or Buyer. The parties will cooperate in the preparation, execution and filing of all tax returns and other documentation with respect to all such Transfer Taxes. The parties will take all reasonable steps to minimize any Transfer Taxes.

(b)    Seller shall be responsible for the payment of, and will indemnify the Buyer against, all taxes (other than Transfer Taxes, but including without limitation, any interest, penalty or addition thereto) due or assessed that relate to the holding and use of the Exhibit A Assets (including, for the avoidance of doubt any state or local sales and use taxes assessed with respect to the conduct of the Business prior to the Closing Date) for all taxable periods which end on or prior to the Closing Date. Buyer shall be responsible for the payment of, and will indemnify the Seller against, all taxes (including without limitation, any interest, penalty or addition thereto) due or assessed that relate to the holding and use of the Exhibit A Assets for all taxable periods which commence on or after the Closing Date. In the case of any taxable period starting before and ending after the Closing Date (a "Straddle Period"), the amount of taxes allocable to the portion of such Straddle Period ending on the Closing Date shall be deemed to be:

(i)    in the case of taxes imposed on a periodic basis (such as real or personal property taxes), the amount of such taxes for the entire period (or, in the case of such taxes payable on an arrears basis, the amount of such taxes for the immediately preceding taxable period) multiplied by a fraction, the numerator of which is the number of calendar days in

8

such taxable period ending on and including the Closing Date and the denominator of which is the number of calendar days in the entire relevant taxable period; and

(ii)    in the case of taxes not described in (i) above, the amount of any such taxes shall be determined as if such taxable period ended as of the close of business on the Closing Date;

(iii)    for purposes of this Section 6.8(b), any Assets that are included in a tax assessment by the relevant tax authority along with assets that are not purchased pursuant to this Agreement shall be deemed to incur a proportionate amount of taxes of all such assets based upon the tax authority assessed tax values of such Assets (any computation of applicable taxes subject to this Section 6.8(b)(iii) shall be included on the Estimated Tax Statement (as defined under Section 6.8(b)(iv)); and

(iv)    at least five business days prior to the Closing Date, Seller shall present to Buyer for Buyer's review and consent, such consent not to be unreasonably withheld, a statement reflecting an estimated amount of taxes due by Buyer on the one hand and Seller on the other hand determined under the principles of this Section 6.8(b) (including, for the avoidance of doubt any state or local sales and use taxes assessed with respect to the conduct of the Business prior to the Closing Date); provided that, if the actual amount of such taxes for a Straddle Period is not known for the Straddle Period as of the Closing Date, the amount of such taxes attributable to the portion of the Straddle Period that ends on the Closing Date will be estimated as of the Closing Date based on the amount of tax for the prior taxable period (taking into account any changes in the rate of tax or composition of the assets) (such statement, the "Estimated Tax Statement," and any amount due thereunder, the "Estimated Tax Adjustment Amount"). When the actual amount of any such taxes calculated on the Estimated Tax Statement becomes known, if the net amount of Seller's share of such taxes is greater than what is shown on the Estimated Tax Statement, then Seller will promptly pay such excess to Buyer and, if Seller's share of the net amount of such taxes is less than what is shown on the Estimated Tax Statement, Buyer will promptly pay such shortfall to Seller.

(c)    Any tax refunds (including any interest related thereto) received by Buyer with respect to the Exhibit A Assets for periods prior to and including the time of the Closing Date (or portions thereof) shall be for the account of Seller, and any tax refunds (including any interest related thereto) with respect to the Exhibit A Assets received by Seller relating to periods after the time of the Closing Date (or portions thereof) shall be for the account of Buyer. Buyer shall pay over to Seller, and Seller shall pay over to Buyer, any such refund amount received by the other party (net of any taxes payable by such other party as a result of receiving such tax refunds) within five (5) business days of receipt thereof. Seller shall be entitled to request that Buyer, at Seller's expense, file for and obtain any tax refunds with respect to tax periods or portions thereof ending on or before the Closing Date with respect to the relevant Exhibit A Asset(s), and Buyer shall be entitled to request that Seller, at Buyer's expense, file for and obtain any tax refunds with respect to periods after the time of the Closing Date (or portions thereof) with respect to the relevant

9

Exhibit A Assets. Neither Buyer's nor Seller's consent to such request from the other party shall be unreasonably withheld.

(d)     Buyer and Seller will cooperate fully, as and to the extent reasonably requested by the other party, in connection with any tax matters relating to the Assets (including by the provision of reasonably relevant records or information, and cooperation in the fling of any tax returns).

6.7     Confidentiality Agreement; Public Statements. Notwithstanding any provision of this Agreement, the parties acknowledge and agree that the Confidentiality Agreement to which they are parties remains in full force and effect between them. In the event either party desires to issue a press release or make a public statement about the transactions contemplated by this Agreement, such party shall obtain the consent of the other party (such consent not to be unreasonably withheld) to the content of any such press release or other public statement.

6.8     Updating of Representations and Warranties. Each party hereto will give prompt notice to the other party of (a) the occurrence, or failure to occur, of any event which occurrence or failure would be likely to cause any representation or warranty of Seller or Buyer, as the case may be, contained in this Agreement to be untrue or inaccurate at any time from the date hereof to the Closing Date, and (b) any failure of the Seller or Buyer, as the case may be, to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by any of them under this Agreement; provided that such notice shall not be deemed to modify any representation or warranty previously made in this Agreement, and any failure of the party receiving such notice to take action in response to such notice shall not be deemed a waiver or estoppel with respect to any such matter.

6.9 Use of Software. To the extent Seller has a legal right to do so without incurring cost or liability, at the Closing Seller will transfer to Buyer any and all rights Seller may have to software owned by Seller or licensed to Seller by any other Person under a fully paid-up license that is embedded in the Assets and that is necessary for the basic operation of the Assets. The parties understand and agree that Seller has no obligation to obtain any license, right, title or interest to such software for the benefit of Buyer.

## ARTICLE VII  CONDITIONS TO CLOSING

7.1     Conditions to Each Party's Obligation to Effect the Closing. The respective obligations of each party to effect the Closing hereunder shall be subject to the fulfillment at or prior to the Closing of the following conditions:

(a)     there shall not be in effect any preliminary or permanent injunction or other order or decree by any federal or state court or administrative agency having competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated in this Agreement;

(b)     the Bankruptcy Court shall have entered the Sale Order approving this Agreement, substantially in the form attached to this Agreement, and such Sale Order, among other things: (i) shall include a determination that Buyer is a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code and, therefore, entitled to the protections of such section, (ii) shall

include a waiver of the ten day stay set forth in Federal Rule of Bankruptcy Procedure 6004(h), and (iii) shall not have been stayed or otherwise limited as to its terms or effectiveness; and the Sale Order (i) shall not have been reversed or stayed at the time of Closing, and (ii) shall not be the subject of an appeal or motion for rehearing or new trial, provided however, that Buyer, in its sole and absolute discretion, may elect to proceed with the Closing even if an appeal from or a motion for rehearing or new trial on the Sale Order is pending; and

(c)     all filings, consents and approvals necessary to permit the parties hereto to perform the transactions contemplated hereby shall have been duly obtained, made or given, shall not be subject to the satisfaction of any condition that has not been satisfied or waived and shall be in full force and effect.

7.2    Conditions to Obligations of the Buyer. The obligation of the Buyer to effect the Closing hereunder shall be subject to the fulfillment at or prior to the Closing of the following additional conditions:

(a)     the representations and warranties of Seller set forth in this Agreement shall have been true and correct in all material respects (and those representations and warranties that are qualified as to materiality shall be true and correct in all respects) as of the date of this Agreement and shall be true and correct in all material respects (and those representations and warranties that are qualified as to materiality shall be true and correct in all respects) as of the Closing Date as though made at and as of the Closing (except to the extent that such representations and warranties are stated to be made as of a date other than the date they were made, in which case they shall have been true and correct in all material respects, and those representations and warranties that are qualified as to materiality shall be true and correct in all respects as of such other date);

(b)     Seller shall have performed and complied in all material respects with all obligations and covenants contained in this Agreement which are required to be performed and complied with by Seller on or prior to the Closing;

(c)     all Encumbrances on the Assets shall have been released or fully discharged pursuant to the Sale Order; and

(d)     the Assets, taken as a whole, shall not have been materially and adversely affected by any act of God or public enemy, casualty, theft, fire, flood, explosion, hurricane, tornado, earthquake, hail, storm, drought, accident, vandalism, war, or other event or occurrence, whether or not covered by insurance.

7.3    Conditions to Obligations of Seller. The obligation of Seller to effect the Closing hereunder shall be subject to the fulfillment at or prior to the Closing of the following additional conditions:

(a)     The representations and warranties of Buyer set forth in this Agreement shall have been true and correct in all material respects (and those representations and warranties that are qualified as to materiality shall be true and correct in all respects) as of the date of this Agreement and shall be true and correct in all material respects (and those representations and warranties that are qualified as to materiality shall be true and correct in all respects) as of the Closing Date as

11

though made at and as of the Closing (except to the extent that such representations and warranties are stated to be made as of a date other than the date they were made, in which case they shall have been true and correct in all material respects as of such other date); and

(b)    Buyer shall have performed and complied in all material respects with all obligations and covenants contained in this Agreement which are required to be performed and complied with by Buyer on or prior to the Closing.

## ARTICLE VIII TERMINATION

8.1    <u>Termination</u>.    This Agreement may be terminated prior to the Closing Date as follows:

(a)    by mutual written consent of Seller and Buyer;

(b)    by either party upon written notice to the other party, if the Closing has not occurred on or before November 30, 2014 (as may be extended by written agreement of the parties) (the "Termination Date");

(c)    by either party, upon written notice to the other party, if (i) there shall be any Law or regulation that makes consummation of the transactions contemplated hereby illegal or otherwise prohibited or (ii) consummation of the transactions contemplated hereby would violate any nonappealable final order, decree or judgment of (A) the Bankruptcy Court or (B) any other court or governmental authority having competent jurisdiction;

(d)    by either party, upon written notice to the other party, if the Bankruptcy Court does not enter the Sale Order on or before November 20, 2014, unless extended to a later date by mutual consent of Seller and Buyer;

(f)    by Buyer, upon written notice to Seller, if, on or prior to the Closing Date, Seller is in material breach of any representation, warranty, covenant or agreement herein contained (ignoring any materiality qualifier contained therein) and such breach shall not be cured within ten days of the date of notice of breach served by Buyer claiming such material breach; provided, that the right to terminate this Agreement pursuant to this section shall not be available to Buyer if it is in material breach of this Agreement at the time notice of termination is delivered;

(g)    by Buyer, upon written notice to Seller, if any of the conditions to Buyer's obligations to consummate the transactions contemplated by this Agreement provided in Sections 7.1 or 7.2, as applicable, hereof shall not have been satisfied, complied with or performed in any material respect (ignoring any materiality qualifier contained therein) as of the Termination Date and Buyer shall not have waived in writing such failure of satisfaction, non- compliance or non-performance;

(h)    by Seller, upon written notice to Buyer, if, on or prior to the Closing Date, Buyer is in material breach of any representation, warranty, covenant or agreement herein contained (ignoring any materiality qualifier contained therein) and such breach shall not be cured within ten days of the date of notice of breach served by Seller claiming such material breach; provided, that

12

the right to terminate this Agreement pursuant to this section shall not be available to Seller if it is in material breach of this Agreement at the time notice of termination is delivered; and

      (i)     by Seller, upon written notice to Buyer, if any of the conditions to Seller's obligations to consummate the transactions contemplated by this Agreement provided in Sections 7.1 or 7.3, as applicable, hereof shall not have been satisfied, complied with or performed in any material respect (ignoring any materiality qualifier contained therein) as of the Termination Date and Seller shall not have waived in writing such failure of satisfaction, non- compliance or non-performance.

      8.2     <u>Effect of Termination</u>. No termination of this Agreement pursuant to Section 8.1 shall be effective until written notice thereof is given to the non-terminating party specifying the provision hereof pursuant to which such termination is made. If validly terminated pursuant to Section 8.1, this Agreement shall be void and of no effect, and all further obligations of the parties under or pursuant to this Agreement shall terminate without further liability of any party to the other.

## ARTICLE IX SURVIVAL

      9.1     <u>Survival of Representations and Warranties</u>.

      (a)     The representations and warranties of Seller in this Agreement and the Seller Ancillary Documents other than Sections 4.2, 4.3, 4.4, 4.10 and 4.13 of this Agreement shall not survive the Closing. The representations and warranties of Seller in Sections 4.4 and 4.10 of this Agreement shall survive Closing until December 31, 2014. The representations and warranties of Seller in Sections 4.2, 4.3 and 4.13 of this Agreement shall survive Closing until the end of the Removal Period.

      (b)     The representations and warranties of Buyer in this Agreement and the Buyer Ancillary Documents shall not survive the Closing, except for the representations and warranties of Buyer in Sections 5.2, 5.3 and 5.5 of this Agreement, which shall survive Closing until the end of the Removal Period.

      (c)     The parties hereby agree that the limitations set forth above in this Section 9.1 on the survival of the representations and warranties of the parties shall not apply to a representation or warranty in the event that a party has committed fraud or made an intentional misrepresentation with respect to such representation or warranty.

      9.2     <u>Survival of Covenants</u>. The covenants and agreements of Seller and Buyer in this Agreement, the Seller Ancillary Documents and the Buyer Ancillary Documents shall survive the Closing in accordance with the terms of such covenants and agreements.

      9.3     <u>Exclusive Remedy</u>. The parties have voluntarily agreed to define their rights, liabilities and obligations respecting the subject matter of this Agreement exclusively in contract pursuant to the express terms and provisions of this Agreement. Accordingly, except with respect to claims based on fraud or intentional misrepresentation, the sole and exclusive remedies for any breach of the terms and provisions of this Agreement and any certificates, documents or other

agreements executed in connection with this Agreement (including any representations and warranties set forth herein and therein) or any tort claims or causes of action that may be based upon, arise out of or relate to this Agreement and any certificates, documents or other agreements executed in connection with this Agreement, or the negotiation, execution or performance of this Agreement and any certificates, documents or other agreements executed in connection with this Agreement, shall be those remedies available at law or in equity for breach of contract only (as such contractual remedies may be further limited or excluded pursuant to the express terms of this Agreement or any certificates, documents or other agreements executed in connection with this Agreement).

## ARTICLE X MISCELLANEOUS

10.1 "AS IS" TRANSACTION. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO SELLER'S BUSINESS OR TO THE ASSETS. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIM ANY WARRANTY (EXPRESS OR IMPLIED) OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ASSETS. IF CLOSING OCCURS, BUYER WILL ACCEPT THE ASSETS, AT THE CLOSING DATE "AS IS," "WHERE IS," SUBJECT TO THE PROVISIONS OF THIS AGREEMENT AND THE SALE ORDER PROVIDING, AMONG OTHER THINGS, THAT THE SALE OF THE ASSETS IS FREE AND CLEAR OF ALL ENCUMBRANCES.

10.2 NO CONSEQUENTIAL OR PUNITIVE DAMAGES; LIMITATION OF LIABILITY. NO PARTY (OR ITS AFFILIATES OR REPRESENTATIVES) SHALL, UNDER ANY CIRCUMSTANCE, BE LIABLE TO ANY OTHER PARTY (OR ITS AFFILIATES OR REPRESENTATIVES) FOR ANY CONSEQUENTIAL, EXEMPLARY, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES CLAIMS BY SUCH PARTY UNDER THE TERMS OF OR DUE TO ANY BREACH OF THIS AGREEMENT, INCLUDING LOSS OF REVENUE OR INCOME, DAMAGES BASED ON ANY MULTIPLIER OF PROFITS OR OTHER VALUATION METRIC, COST OF CAPITAL, DIMINUTION OF VALUE OR LOSS OF BUSINESS REPUTATION OR OPPORTUNITY. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT, OR IN ANY OTHER DOCUMENT, INSTRUMENT OR AGREEMENT DELIVERED IN CONNECTION WITH THIS AGREEMENT, TO THE CONTRARY, THE MAXIMUM AGGREGATE LIABILITY OF BUYER AND ITS REPRESENTATIVES TO SELLER AND ITS REPRESENTATIVES ARISING OUT OF ANY AND ALL BREACHES OR VIOLATIONS BY BUYER THAT OCCUR AT OR BEFORE THE CLOSING, INCLUDING WITHOUT LIMITATION ANY BREACH BY THE BUYER OF ITS OBLIGATION TO EFFECT THE CLOSING HEREUNDER, OR FAILURES AT OR BEFORE THE CLOSING OF BUYER TO COMPLY WITH, THIS AGREEMENT OR SUCH OTHER DOCUMENTS, INSTRUMENTS OR AGREEMENTS, SHALL NOT EXCEED THE AMOUNT OF THE DEPOSIT, AND THE SOLE AND EXCLUSIVE RECOURSE AND REMEDY OF SELLER AND ITS REPRESENTATIVES IN CONNECTION WITH ANY SUCH BREACH,

14

VIOLATION OR FAILURE SHALL BE TO MAKE A CLAIM AGAINST THE DEPOSIT IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE DEPOSIT ESCROW AGREEMENT.

10.3    Certain Definitions.

(a)    "Affiliate" means a Person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the Person specified.

(b)    "Assets" means the assets set forth on Exhibit A.

(c)    "Business" means the Assets and the business operated by Seller prior to the Petition Date.

(d)    "Exhibit "A" Assets" shall refer to the Assets set forth on Exhibit A.

(e)    "Seller's Knowledge" shall refer to the actual knowledge, after due inquiry, of any, some or all of the members of Seller's management.

(f)    For any party hereto, a document is "substantially in the form" of a document referred to in this Agreement when it is identical to the document referred to except for revisions necessary to correct typographical and clerical errors, changes to the date of such document and other modifications made with the consent of such party, such consent to not be unreasonably withheld. For the sake of clarity, a party shall not be deemed to have unreasonably withheld its consent if such revisions, changes or modifications would materially adversely affect its interest.

10.4    Expenses. Each party will bear its respective costs and expenses, including attorneys' fees and fees of investment bankers or other financial advisors, incurred in connection with this Agreement, and the transactions contemplated hereby.

10.5    Further Assurances. On and after the Closing, each party will take all appropriate action and execute all documents, instruments or conveyances of any kind which may be reasonably necessary or advisable to carry out any of the provisions hereof, including, without limitation and, subject to Seller's obligations under Section 6.12, putting Buyer in possession and operating control of the Assets.

10.6    Amendment, Modification, Extension and Waiver. This Agreement may be amended, modified or supplemented only by written agreement of Seller and Buyer. Except as otherwise provided in this Agreement, any failure of any of the parties to comply with any obligation, covenant or condition herein may be waived in writing by the party or parties granting such waiver, but such waiver shall not operate as a waiver of, or estoppel with respect to any subsequent or other failure to comply with any obligation, covenant or condition.

10.7    Notices. All notices, request, demand and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given (a) if delivered by hand, upon delivery; (b) if delivered by mail certified or registered mail with postage prepaid, within three business days after dispatch or (c) if delivered by facsimile transmission, on the next

business day after dispatch, provided that the sender receives confirmation of receipt, in each case addressed as follows:

      (a)    If to Seller, to:

ACC-Q-DATA, INC.
Lisa Lake, President
900 N. Federal Hwy,
Ste 470, Boca Raton, FL, 33432

With a copy to:

Aaron Wernick, Esq.
Furr & Cohen, P.A.
2255 Glades Road, Ste. 337W
Boca Raton, FL  33431

      (b)    If to Buyer, to:

NUMED WELLNESS, LLC
c/o Lauren Bannigan, Esq.
4800 N. Federal Hwy
Suite B200
Boca Raton, FL 33431

With a copy to (for informational purposes only):

William E. Corley, III, Esquire
301 Yamato Road, Ste. 1240
Boca Raton, FL  33431

    10.8    <u>Assignment</u>. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of the other parties hereto, which shall not be unreasonably withheld, and any such purported assignment in violation hereof shall be void. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors, assigns, heirs, and legal representatives and no other person or entity shall have any right, benefit or obligation hereunder.

    10.9    <u>Third Party Beneficiaries</u>. Buyer and Seller intend that this Agreement and those transactional documents contemplated by this Agreement shall not benefit or create any right or cause of action in any Person other than the parties hereto.

    10.10    <u>Severability; Time of Essence</u>. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in

16

good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible. Time is of the essence with regard to this Agreement and the transactions contemplated hereby.

10.11  Governing Law. THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE UNITED STATES BANKRUPTCY CODE AND THE LAWS OF THE STATE OF FLORIDA.

10.12  Submission to Jurisdiction. The parties hereto agree that all litigation concerning any dispute between Seller and Buyer arising from or related in any way to this Agreement and the transactions contemplated hereby, those arising out of the sale of the Assets, or any conduct or facts related thereto, shall be heard by the Bankruptcy Court, and if the Bankruptcy Case has been closed, such litigation shall be heard by the United States District Court or the courts of the State of Florida having subject matter jurisdiction thereof and sitting in Palm Beach County, Florida, and the parties hereby consent to the jurisdiction of such courts for such purposes, and waive any objection they may have thereto based on venue, forum non conveniens or other similar doctrines.

10.13  Counterparts; Facsimile. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. This Agreement may be executed and delivered by facsimile transmission or other electronic copy, and a facsimile or electronic copy of this Agreement or of a signature of a party will be effective as an original.

10.14  Incorporation of Exhibits. All Schedules and Exhibits attached hereto and referred to herein are hereby incorporated herein by reference and made a part of this Agreement for all purposes as if fully set forth herein.

10.15  Entire Agreement. This Agreement, including the Schedules and Exhibits hereto, and the Seller Ancillary Documents and Buyer Ancillary Documents and the other documents delivered pursuant hereto contain the entire understanding of the parties hereto with respect to the subject matter hereof and thereof, and supersede all prior agreements and understandings, inducements or conditions, express or implied, oral or written, between the parties with respect to the subject matter hereof and thereof.

10.16  No Successor Liability. The parties intend that, except where expressly prohibited under applicable Law, upon the Closing, Buyer shall not be deemed to: (i) be the successor of Seller, (ii) have, de facto, or otherwise, merged with or into Seller, (iii) be a mere continuation or substantial continuation of Seller or the enterprise(s) of Seller, or (iv) be liable for any acts or omissions of Seller in the conduct of the Business or arising under or related to the Assets other than as set forth in this Agreement. Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, the parties intend that Buyer shall not be liable for any bankruptcy claims, other claims, written notices, causes of action, proceedings, complaints, investigations or other proceedings against Seller or any of its predecessors or affiliates, and Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, whether now existing or hereafter arising, or whether fixed or contingent,

17

with respect to the Business, the Assets or any obligations of Seller arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Business or the Assets, as the case may be, prior to the Closing, except as expressly provided in this Agreement. The parties agree that the provisions substantially in the form of this Section 10.16 shall be reflected in the Sale Order.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have executed this Asset Purchase Agreement to be effective as of the date first above written.

SELLER: Acc-Q-Data, Inc.

_____

By: Lisa Lake, President

BUYER: NuMed Wellness, LLC

_____

By: Clifford Carroll, Authorized Member

19

**EXHIBIT "A"**

<u>ASSETS</u>

1.    Customer lists and related records to enable processing of customer accounts

2.    Two Lenovo computers

3.    Twelve Dell computers

4.    Seven Brother printers, 3 years old

5.    Two Samsung printers

6.    Ten Brother printers, 2 years old

7.    All unexpired service contracts with medical providers

8.    All choses and causes of action

9.    General intangibles

## EXHIBIT B

## BILL OF SALE AND ASSIGNMENT AGREEMENT

THIS BILL OF SALE AND ASSIGNMENT AGREEMENT (this "Bill of Sale") is duly made, executed and delivered effective as of, _____, 2014 (the "Closing Date"), by and between Acc-Q-Data, Inc. ("Seller"), and NuMed Wellness, LLC ("Buyer"), pursuant and subject to all of the representations, warranties, terms, covenants and conditions of that certain Asset Purchase Agreement by and between Buyer and Seller, dated as of _____ (the "Purchase Agreement"). All capitalized terms used but not defined herein shall have the same meanings assigned to them in the Purchase Agreement and in the Sale Order (hereafter defined).

### RECITALS:

WHEREAS, on September 5, 2014 (the "Petition Date"), Seller filed a voluntary petition for relief (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), Case No. 14-30060-PGH;

WHEREAS, Seller continues to operate as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Buyer and Seller entered into the Purchase Agreement, pursuant to which Buyer agreed to purchase from Seller, and Seller agreed to sell to Buyer, the Assets;

WHEREAS, the Purchase Agreement and the purchase and sale of the Assets were approved and authorized by the Bankruptcy Court pursuant to an order entered in the Bankruptcy Case on_____, 2014 (the "Sale Order");

WHEREAS, all conditions to the Closing were duly satisfied or waived pursuant to the Purchase Agreement, and the sale was consummated, transacted and closed as of the Closing Date set forth above;

WHEREAS, the Purchase Agreement provides that the parties will deliver to each other at Closing executed counterparts of an original bill of sale evidencing the sale, transfer and conveyance of the Assets to Buyer, and this Bill of Sale is the bill of sale provided for in the Purchase Agreement; and

WHEREAS, Seller, in consideration of the Purchase Price paid to Seller under the Purchase Agreement, the receipt and sufficiency of which is hereby acknowledged, has sold, transferred, conveyed and assigned and by these presents does sell, transfer, convey and assign unto Buyer, its successors and assigns, all of Seller's rights, title and interests in and to the Assets.

NOW, THEREFORE, pursuant to the foregoing recitals, and in consideration of the representations, warranties, terms, covenants and conditions contained in the Purchase Agreement and the payment by Buyer to Seller of the Purchase Price set forth in the Purchase Agreement, the receipt of which is hereby acknowledged, the parties hereto, intending to be legally bound by this Bill of Sale, hereby covenant, agree, promise, warrant, represent and declare as follows:

21

**AGREEMENT:**

1.     Recitals. The background recitals are incorporated herein and made a part of this Bill of Sale by this reference.

2.     Sale and Transfer of Assets. Effective as of the Closing Date, and pursuant to and in accordance with the Purchase Agreement and the Sale Order, Seller hereby sells, transfers, conveys and assigns to Buyer all of the Assets, as defined in the Sale Order and listed in the attached Exhibit "A", free and clear of all Encumbrances pursuant to Section 363(b) and (f) of the Bankruptcy Code, and Buyer accepts such sale, transfer, conveyance and assignment of the Assets.

3.     Further Actions. Seller hereby covenants that, from time to time after delivery of this Bill of Sale, at Buyer's request and expense, and without further consideration, Seller will execute and deliver such instruments of conveyance and transfer and take such other actions as Buyer may reasonably request in order to more effectively sell, transfer, assign, deliver and vest in Buyer title to and possession of the Assets, and any and all other rights and interests pertaining thereto.

4.     Governing Law. This Bill of Sale shall be governed by and construed and enforced in accordance with the laws of the State of Florida and the Bankruptcy Code.

5.     Counterparts; Facsimiles. This Bill of Sale may be executed in one or more counterparts, each of which shall constitute an original agreement but all of which together shall constitute one and the same instrument. The exchange of copies of this Bill of Sale and of signature pages by electronic mail or facsimile transmission shall constitute effective execution and delivery of this Bill of Sale as to the parties and may be used in lieu of the original Bill of Sale for all purposes.

6.     Inurement. This Bill of Sale will inure to the benefit of Buyer, its successors, assigns, grantees, administrators, receivers and trustees, and will be binding upon Seller, its estate, creditors, direct and indirect equity holders, all parties-in-interest, affiliates, successors, assigns, grantees, any affected third parties, administrators, receivers and trustees, including, without limitation, any trustee or successor trustee appointed or elected in the Bankruptcy Case.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Bill of Sale effective as of the Closing Date.

SELLER: Acc-Q-Data, Inc.

_____

By: Lisa Lake, President

BUYER: NuMed Wellness, LLC

_____

By:  Clifford Carroll, Authorized Member

23

Label Matrix for local noticing
113C-9
Case 14-30060-PGH
Southern District of Florida
West Palm Beach
Tue Oct  7 15:11:19 EDT 2014

ACC-Q-DATA, INC.
900 North Federal Hwy #470
Boca Raton, FL 33432-2748

Tax Express & Accounting Services, Inc.
c/o Jeffrey N. Schatzman, Esq.
9990 SW 77th Avenue
Penthouse 2
Miami, FL 33156-2661

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Bank of America
PO Box 941000
Simi Valley, CA 93094-1000

Bank of America, N.A.
NC4-105-02-99
PO Box 26012
Greensboro, NC 27420-6012

Boca Business Equipment
1100 N. Florida Mango Road
Suite E
West Palm Beach, FL 33409-5263

Capital One
PO Box 30285
Salt Lake City, UT 84130-0285

Dell Financial Services L.L.C.
99355 Collections Center Drive
Chicago, IL 60693-0993

Florida Department of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Great American Financial Services
625 First Street SE
Suite 800
Cedar Rapids, IA 52401-2031

(p)GREATAMERICA FINANCIAL SERVICES CORPORATIO
PO BOX 609
CEDAR RAPIDS IA 52406-0609

Internal Revenue Service
POB 7346
Philadelphia, PA 19101-7346

Investments Limited
215 N Federal Highway
Boca Raton, FL 33432-3992

Jason Watkins
9333 Niles Court
Keller, TX 76244-6159

Jason Watkins
Bridge Orthopedic Solutions
2304 W Park Row Ste 5
Arlington, TX 76013-3347

Kim Seals
Tax Express & Accounting Services
11124 Kingston Pike
Suite 119-158
Knoxville, TN 37934-2863

Mark Lake
21448 Crest Falls Ct.
Boca Raton, FL 33428-4849

Marlake Cab Corp.
c/o Harold Lake
5107 Europa Dr., Apt #M
Boynton Beach, FL 33437-2192

NuMedCare, LLC
4800 N. Federal Hwy
Bldg. B, Suite 200
Boca Raton, FL 33431-3408

Office Depot Credit Plan
PO Box 790449
Saint Louis, MO 63179-0449

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Pitney Bowes
Purchase Power
P.O. Box 371874
500 Ross St. Ste 154-0470
Pittsburgh, PA 15262-0001

Pitney Bowes Global Financial
Services LLC
PO Box 371887
Pittsburgh, PA 15250-7887

Pitney Bowes Global Financial Servs LLC
2225 American Drive
Neenah, WI 54956-1005

Pitney Bowes Inc
4901 Belfort Rd, Ste 120
Jacksonville FL 32256-6016

Robert S. Wrinkle,  IMS
11004 Farragut Hills Blvd.
Knoxville, TN 37934-4031

Tax Express & Accounting Service, Inc.
c/o Kim Seals
11124 Kingston Pike
Suite 119-158
Knoxville, TN 37934-2863

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Wells Fargo Bank
Business Direct Division
MAC S4101-050
PO Box 29482
Phoenix, AZ 85038-9482

Wells Fargo Business Direct
P.O. Box 348750
Sacramento, CA 95834-8750

Aaron A Wernick
2255 Glades Rd # 337W
Boca Raton, FL 33431-7379

Jennifer Wrinkle
c/o Jeffrey N. Schatzman, Esq.
9990 SW 77th Avenue
Penthouse 2
Miami, FL 33156-2661

Kim Seals
c/o Jeffrey N. Schatzman, Esq.
9990 SW 77th Avenue
Penthouse 2
Miami, FL 33156-2661

Robert Wrinkle
c/o Jeffrey N. Schatzman, Esq.
9990 SW 77th Avenue
Penthouse 2
Miami, FL 33156-2661

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America
P.O. Box 982238
El Paso, TX 79998-2238

(d)Bank of America
PO Box 982238
El Paso, TX 79998-2238

GreatAmerica Financial Services Corp.
625 First Street S.E.
Suite 800
Cedar Rapids, IA 52401

(d)GreatAmerica Financial Services Corporatio
ATTN: Peggy Upton, Litigation Specialist
PO Box 609
Cedar Rapids, IA 52406

US Bank
Cardmember Services
PO Box 6335
Fargo, ND 58125-6335

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)West Palm Beach

End of Label Matrix
Mailable recipients    34
Bypassed recipients     1
Total                  35